IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. BRUCE BOISE, et al. | : : : | CIVIL ACTION NO. 08-287 |
| v. | : : | |
| CEPHALON, INC., et al. | : | |

O'NEILL, J.                                                                                                February 2, 2016

## MEMORANDUM

Plaintiffs Bruce Boise, Keith Dufour and Andrew Augustine bring this action against defendants Cephalon, Inc., and John Does #1-100 to recover damages and civil penalties on behalf of the United States as qui tam relators pursuant to the False Claims Act (FCA), 31 U.S.C. §§ 3729, et seq. and analogous state laws. Now before me are Cephalon's motion for reconsideration of my July 30, 2015 order,[1] or in the alternative, motion for partial judgment on the pleadings (Dkt. No. 138), relators' response (Dkt. No. 141), Cephalon's reply (Dkt. No. 143) and the parties' notices of supplemental authority (Dkt. Nos. 145-52). For the reasons below, I will deny Cephalon's motion to the extent that it seeks reconsideration and grant its motion to the extent that it seeks partial judgment on the pleadings.

## BACKGROUND

On January 3, 2008, relator Boise filed a complaint bringing FCA claims against Cephalon, alleging an off-label marketing scheme for the drug Fentora. The next year, on June 30, 2009, unidentified relators filed an action alleging FCA claims against Cephalon, including allegations of an off-label marketing scheme for the drug Provigil. See United States ex rel. Doe v. Cephalon, Inc., No. 09-2926 (E.D. Pa.). On January 14, 2010 Boise filed his first amended

---

[1] Cephalon calls its motion a "motion to modify [my] July 30, 2015 Order" without citing a Rule under which it is filing the motion or a standard of review. See Dkt. No. 138-1 at ECF p. 1. I will consider its motion as one for reconsideration.

complaint in this action adding new FCA allegations against Cephalon, including allegations of an off-label marketing scheme for Provigil. On September 19, 2013, the Doe action was dismissed.

Relators Augustine and Dufour joined Boise on his second amended complaint filed on February 28, 2014, providing additional details on the alleged Provigil scheme. On April 4, 2014, Cephalon filed a motion to dismiss relators' Provigil claims for lack of subject matter jurisdiction based on the FCA's first-to-file bar.[2] On October 9, 2014, I stayed Cephalon's motion pending the resolution of U.S. ex rel. Carter v. Halliburton Co., 710 F.3d 171 (4th Cir. 2013) aff'd in part, rev'd in part and remanded sub nom. Kellogg Brown & Root Servs., Inc. v. U.S. ex rel. Carter, 135 S. Ct. 1970 (2015). Relators informed me of the decision in Carter and I gave Cephalon the opportunity to respond. See Dkt. No. 133. Cephalon did not oppose relators' notice. I then denied Cephalon's motion to dismiss given the holding in Carter that "a qui tam suit under the FCA ceases to be 'pending' once it is dismissed" and thus is not preclusive of later filed actions under the first-to-file bar. See Carter, 135 S. Ct. at 1979.

Cephalon has now filed a motion for reconsideration or, in the alternative, a motion for partial judgment on the pleadings, asking me to dismiss relators' Provigil claims without prejudice to refiling. Relators oppose Cephalon's motion, arguing that allowing their Provigil claims to continue without dismissal and refiling is the proper, fair and efficient procedural route.

**STANDARD OF REVIEW**

**I.   Motion for Reconsideration**

Pursuant to Local Rule 7.1(g), a party may move for "reconsideration or reargument . . .

---

[2] At the time Cephalon moved to dismiss relators' Provigil claims, relators' second amended complaint was pending. Since then, relators have filed a third amended complaint.

within 14 days after the entry of the judgment, order or decree concerned."[3] Local R. Civ. P. 7.1(g). In order to prevail on a motion for reconsideration, the moving party must show one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 667 (3d Cir. 1999).

Motions for reconsideration are granted only "sparingly because of the interests in finality and conservation of scarce judicial resources." Pa. Ins. Guar. Ass'n v. Trabosh, 812 F. Supp. 522, 524 (E.D. Pa. 1992). The moving party's "mere disagreement" with the Court's decision is not grounds for reconsideration. Meachum v. Temple Univ. of the Commw. Sys. of Higher Educ., 56 F. Supp. 2d 557, 557 n.2 (E.D. Pa. June 30, 1999), citing Bermingham v. Sony Corp., 820 F. Supp. 834, 856 (D.N.J. 1992). The moving party bears a substantial burden, which cannot be satisfied through "recapitulation of the cases and arguments considered by the court before rendering its original decision." Young Jewish Leadership Concepts v. 939 HKH Corp., No. 93-2643, 1994 WL 184410, at *1 (E.D. Pa. May 10, 1994), citing Starr v. J.C.I. Data Processing, Inc., 767 F. Supp. 633, 635 (D.N.J. 1991). "[A] motion for reconsideration 'addresses only factual and legal matters that the Court may have overlooked . . . . It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through

---

[3] "Although the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, 'as long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.'" Deeters v. Phelan Hallinan & Schmieg, LLP, No. 3:11-252, 2013 WL 6524625, at *1 (W.D. Pa. Dec. 12, 2013), quoting United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973). An order denying a motion to dismiss is interlocutory because the order does not end litigation. See Lauro Lines s.r.l. v. Chasser, 490 U.S. 495, 496 (1989) (affirming finding that a lower court's denial of a motion to dismiss was interlocutory).

— rightly or wrongly.'" Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citations omitted).

## II. Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010). Rule 12(c) motions are reviewed under the same standard that applies to motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). See Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted). Accordingly, in deciding a motion for judgment on the pleadings, I "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

The motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court "may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210‑11 (3d Cir. 2009); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

4

## DISCUSSION

**I.     Reconsideration**

Cephalon has moved for reconsideration of my order denying its motion to dismiss relators' Provigil claims under the FCA's first-to-file bar. Cephalon has not specified why reconsideration is warranted under the standards governing reconsideration, but because this issue is not evidentiary and there has been no intervening change in controlling law since Carter was decided, Cephalon must believe reconsideration is necessary to correct "a clear error of law or fact" or to prevent "manifest injustice." For the following reasons, I find that Cephalon has not met the high threshold for reconsideration and will thus deny its motion.

The FCA's first-to-file rule provides that: "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). Resolving a circuit split, the Supreme Court in Carter decided the narrow question of whether a first-filed FCA suit can bar a "related" second-filed suit as a "pending action" in perpetuity even after the first suit is dismissed. 135 S. Ct. at 1978-79. The Supreme Court answered that "a qui tam suit under the FCA ceases to be 'pending' once it is dismissed." Id. at 1979. The Court reasoned that "an earlier suit bars a later suit while the earlier suit remains undecided but ceases to bar that suit once it is dismissed." Id. at 1978. The Court found this interpretation of the first-to-file bar in line with congressional intent because Congress would not "want the abandonment of an earlier suit to bar a later potentially successful suit that might result in a large recovery for the Government[.]" Id. at 1979.

Cephalon argues that after Carter the proper procedural approach is to dismiss relators' Provigil claims without prejudice to refiling for lack of subject matter jurisdiction. Cephalon did

not oppose relators' notice of supplemental authority after Carter was decided and makes this argument now for the first time.[4] Relators argue that Carter does not require dismissal of second-filed claims once the first-filed claims cease to be "pending," that dismissal works against Congress' intent and that because there were no impediments to subject matter jurisdiction once relators' second amended complaint was filed, the case should be permitted to continue with the Provigil claims intact.

The Supreme Court in Carter did not mandate a procedural outcome for second-filed suits whose first-filed counterparts have been dismissed; it only agreed with the Fourth Circuit that the lower court's dismissal with prejudice was in error. See 135 S. Ct. at 1979 (acknowledging some potential "practical problems" with the Court's interpretation of "pending" but noting that the FCA's "qui tam provisions present many interpretive challenges, and it is beyond our ability in this case to make them operate together smoothly like a finely tuned machine"). Carter did not address the procedural outcome for a case in this posture and no courts in this Circuit have decided this issue to make any particular result a "clear error of law."[5]

Applying Carter, several courts have interpreted its implications for cases that were filed while a "related" case was still pending. The First Circuit in U.S. ex rel. Gadbois v. PharMerica

---

[4] Relators contend that because Cephalon failed to oppose their notice of the decision in Carter, it has waived any argument about the implications of Carter in this case. I disagree.

[5] In a decision relied on by Cephalon, U.S. ex rel. Joseph Piacentile v. Sanofi Synthelabo, Inc., No. 05-2927, 2010 WL 5466043, at *4 (D.N.J. Dec. 30, 2010), the Court found that the first-to-file bar applied to a later action when a "related" first-filed action was still pending. Although the Court noted that it "must 'judge whether § 3730(b)(5) barred [a] qui tam action by looking at the facts as they existed at the time that the action was brought,'" it did not base its decision on this principle. See Piacentile, 2010 WL 5466043, at *4 (citation omitted). Instead, it ultimately decided that the first-to-file bar applied because it found that § 3730(b)(5) applies in perpetuity: an interpretation that Carter made clear was incorrect. See id. ("[E]ven complaints that are later dismissed have preclusive effect."). Additionally, the first-filed action in Piacentile had not yet been dismissed and thus the Court was not deciding the procedural issue before me. See id.

Corp., 809 F.3d 1, 3 (1st Cir. Dec. 16, 2015), recently vacated a district court's dismissal of a second-filed case because the first-filed case was no longer "pending." Since the relator had not yet filed an amended pleading after the first-filed case was dismissed and was seeking to supplement his complaint, the Court primarily analyzed whether his complaint was eligible for supplementation under Federal Rule of Civil Procedure 15(d). Gadbois, 809 F.3d at 5-6. The Court's ultimate decision that supplementation may cure jurisdictional defects rests on the premise that in cases involving the first-to-file bar, courts may determine jurisdiction from a later pleading rather than requiring claims to be dismissed and refiled. See id. at 4-6. Considering the need to measure jurisdiction at the time of filing an original complaint in diversity cases, the Court reasoned that when "there are no allegations of manipulative abuse of the rule, the time-of-filing rule is inapposite to the federal question context." Id. at 5. The Court found that since the jurisdictional defect no longer existed, "it would be a pointless formality to let the dismissal of the second amended complaint stand — and doing so would needlessly expose the relator to the vagaries of filing a new action." Id. at 6.

In contrast, two district courts have held after Carter that a second-filed related action must be dismissed without prejudice to refiling once the first-filed case ceases to be pending. U.S. ex rel. Carter v. Halliburton Co., No. 1:11CV602, 2015 WL 7012542, at *13 (E.D. Va. Nov. 12, 2015); United States ex rel. Shea v. Verizon Commc'ns, Inc., No. 09-1050, 2015 WL 7769624, at *11 (D.D.C. Oct. 6, 2015). The Court in Halliburton reasoned that an amended complaint is not "the relevant point of focus for the first-to-file bar" and thus courts can never acquire jurisdiction over an amended complaint because the original complaint will have always been filed at a time when a related action was "pending." 2015 WL 7012542 at *12-13; see also Shea, 2015 WL 7769624 at *9 ("Although no related action is currently pending . . . the Court

7

[must] nonetheless dismiss Plaintiff's action because a related action was pending when he filed his initial 2009 Complaint[.]").

Prior to Carter, several district court cases found that the first-to-file bar did not mandate dismissal of a second-filed suit once the first suit ceased to be pending. See U.S. ex rel. Kurnik v. PharMerica Corp., No. 3:11-CV-01464, 2015 WL 1524402, at *6 (D.S.C. Apr. 2, 2015); U.S. ex rel. Palmieri v. Alpharma, Inc., 928 F. Supp. 2d 840, 852 (D. Md. 2013); but see U.S. ex rel. Moore v. Pennrose Properties, LLC, No. 3:11-CV-121, 2015 WL 1358034, at *13 (S.D. Ohio Mar. 24, 2015) ("[T]he filing of an amended complaint does not create an exception to the time-of-filing rule."); U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., 782 F. Supp. 2d 248, 268 (E.D. La. 2011) (dismissing FCA claims in an amended complaint under the first-to-file bar by finding that there was no jurisdiction over the original complaint). In Palmieri, the Court noted that dismissal of a first-filed case does not automatically permit a second-filed case to continue. 928 F. Supp. 2d at 850. However, the Court found that because the relator in that case had filed an amended complaint, "a subsequent event of jurisdictional significance [had] occurred."[6] Id. The Court stated that "[i]t would elevate form over substance to dismiss the Amended Complaint on first-to-file grounds" at that stage in the case. Id. at 851-52.

Following the same reasoning, the Court in Kurnik permitted a second-filed FCA case to continue without mandating dismissal and refiling because the relator had filed an amended complaint after the first case was dismissed. 2015 WL 1524402 at *6. The Kurnik Court also observed that "allowing [the relator's] claims to survive does not run afoul of the policy behind

---

[6] Additionally, analyzing a Seventh Circuit case that came to the same conclusion as Carter — finding that the first-to-file bar does not apply in perpetuity after a first-filed suit is dismissed — the Palmieri Court noted that, on remand from the Seventh Circuit, that district court allowed the relator to file an amended complaint rather than dismissing the case without prejudice. 928 F. Supp. 2d at 850, citing U.S. ex rel. Chovanec v. Apria Healthcare Grp. Inc., 606 F.3d 361, 365 (7th Cir. 2010).

8

the FCA because it does not threaten Defendants with double recovery" given the dismissed first suit.  Id.  The Court's approach in Kurnik is bolstered by the reasoning in Carter that Congress would not want an abandoned first suit to bar a potentially successful recovery for the government in a second suit.  See 135 S. Ct. at 1979.

Cephalon argues that the procedural outcome here is not an "academic exercise" given the statute of limitations issue in this case.  Dkt. No. 138-1 at ECF p. 12.  However, I will address the statute of limitations issue in my decision on Cephalon's motion for partial judgment on the pleadings.  Contrary to Cephalon's argument, I find that it would be unjust to require relators to refile their claims even though their only procedural roadblock was dismissed over two years ago and they have amended their complaint since then.  Thus, Cephalon's motion for reconsideration will be denied.

## II. Partial Judgment on the Pleadings

In the alternative to reconsideration, Cephalon has moved for partial judgment on the pleadings, seeking to dismiss relators' claims which arose prior to February 28, 2008, six years before relators' second amended complaint was filed.[7]  Relators argue that they are entitled statutory or equitable tolling to pursue the claims Cephalon seeks to exclude.[8]  For the following reasons, I will grant Cephalon's motion for partial judgment on the pleadings and find relators' Provigil claims from before February 28, 2008 time-barred.

---

[7] A party may raise a statute of limitations defense in a Rule 12(c) motion if its application is apparent on the face of the complaint.  Tozer v. Darby PA, No. 13-2005, 2014 WL 1378817, at *3 (E.D. Pa. Apr. 7, 2014); In re Avandia Mktg., Sales Practices & Products Liab. Litig., No. 07-MD-01871, 2011 WL 4018259, at *1 (E.D. Pa. Sept. 7, 2011).

[8] Additionally, relators contend that Cephalon waived "its right to demand a shorter claims period" because Cephalon proposed a discovery timeframe in a discovery plan that included relators' claims from before February 28, 2008.  See Dkt. No. 141 at ECF p. 7.  Because the discovery plan was proposed before I denied Cephalon's motion to dismiss, it does not prevent Cephalon from bringing its motion for judgment on the pleadings.

A.     **Statutory Tolling**

The FCA provides that:

> (b) A civil action under section 3730 may not be brought —
>
> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b). Cephalon argues that the six-year statute of limitations in § 3731(b)(1) applies to relators' Provigil claims, running from when relators filed their second amended complaint on February 28, 2014 — the first pleading submitted after the Doe action was dismissed. Relators argue that they are entitled to the statutory tolling provision in § 3731(b)(2) and that therefore their claims from January 1, 2007 to February 27, 2008 remain viable.

District courts in this Circuit have repeatedly found the FCA's three-year statutory tolling provision applicable only in cases where the Government chooses to intervene.[9] See In re Plavix

---

[9] Deciding a case involving the FCA's statute of limitations, the Court of Appeals in U.S. ex rel. Malloy v. Telephonics Corp., 68 F. App'x 270, 273 (3d Cir. 2003) stated in dicta that the time at which the relator became aware of the defendant's alleged fraud "is important, because it determines whether we apply the six year statute of limitations in § 3731(b)(1), or the three year limitation in § 3731(b)(2)." After Malloy, the Supreme Court in U.S. ex rel. Eisenstein v. City of New York, 556 U.S. 928, 936 (2009) considered an issue in the FCA context involving different appellate filing deadlines when the government is a "party" versus when the government is not involved. The Court found that the United States is not a party to a privately initiated FCA suit when it declines to intervene and that private relators are therefore not entitled to a longer appellate filing deadline. Eisenstein, 556 U.S. at 937. Courts in this Circuit have applied Eisenstein's reasoning to the FCA's statute of limitations provision to find that § 3731(b)(2) does not apply when the United States has declined to intervene. See, e.g., U.S. ex rel. Bauchwitz v. Holloman, 671 F. Supp. 2d 674, 693-94 (E.D. Pa. 2009) (analyzing Malloy and Eisenstein to conclude that a private relator cannot "take advantage of a tolling provision applicable only to the government"). Circuits that have decided the issue have been

Mktg., Sales Practices & Prods. Liab. Litig., No 13-1039, 2015 WL 4997077, at *25 (D.N.J. Aug. 20, 2015); U.S. ex rel. Silver v. Omnicare, Inc., No. 11-1326, 2014 WL 4827410, at *8 (D.N.J. Sept. 29, 2014); U.S. ex rel. Simpson v. Bayer Corp., No. 05-3895, 2014 WL 1418293, at *12 n.15 (D.N.J. Apr. 11, 2014), reconsideration denied, No. 05-3895, 2014 WL 2112357 (D.N.J. May 20, 2014); U.S. ex rel. Bauchwitz v. Holloman, 671 F. Supp. 2d 674, 693-94 (E.D. Pa. 2009). Relators rely on the plain text of the statute to argue that all of these cases have been wrongly decided. Dkt. No. 141 at ECF p. 15.

Contrary to relators' position, I find that the plain text of the FCA supports limiting § 3731(b)(2) to cases in which the government has intervened. See Silver, 2014 WL 4827410, at *8 ("A plain reading of the statute compels the conclusion that a FCA claim must be filed within six years, or if the U.S. government intervenes, the limitations period is extended for three years."). If § 3731(b)(2) could be used by relators in cases where the United States had not intervened, it would be difficult "to describe a circumstance where the six year statute of limitations in § 3731(b)(1) would be applicable." U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726 (10th Cir. 2006). Thus, I find that the FCA's six-year statute of limitations applies in this case, as the United States has declined to intervene.

B.     **Equitable Tolling**

Absent statutory tolling, relators next argue that they are entitled to equitable tolling. Cephalon maintains that equitable tolling is improper because relators have not articulated any

---

split. Compare U.S. ex rel. Sanders v. N. Am. Bus Indus., Inc., 546 F.3d 288, 293 (4th Cir. 2008) (holding that the statute of limitations in § 3731(b)(2) only applies in cases where the United States is a party); U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 725 (10th Cir. 2006) (same); U.S. ex rel Erskine v. Baker, 213 F.3d 638 (5th Cir. 2000) (unpublished table opinion) (same) with U.S. ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1216 (9th Cir. 1996) ("[W]e conclude that Congress did not intend to restrict the tolling provisions of the Act to apply to suits brought by the Attorney General alone, but intended the tolling provision to apply to qui tam plaintiffs as well.").

basis for it.

Equitable tolling may stop a statute of limitations from running to "prevent unnecessarily harsh results in particular cases." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). However, equitable tolling is an extraordinary remedy to be applied sparingly. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 90 (1990). The Court of Appeals has instructed that equitable tolling may apply: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver, 38 F.3d at 1387, citing Sch. Dist. of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981).

Relators' only argument, which they do not support with any authority, is that "an 'extraordinary circumstance' would exist were this Court to require Relators — who have diligently pursued their claims against Cephalon — to refile their complaint in the same forum and, in doing so, allow Cephalon to avoid liability under the FCA for a defined period of time." Dkt. No. 141 at ECF p. 17. Relators do not address why equitable tolling should be applied to permit their claims from January 1, 2007 to February 27, 2008 to proceed. As relators have made neither an argument nor provided support for equitable tolling, and I am not aware of any authority supporting its application in this case, the statute of limitations on relators' claims will not be tolled.

### C.   Claims Barred by the Statute of Limitations

Having established that the FCA's six-year statute of limitations applies to relators' Provigil claims, the final issue I must determine is on which date the statute of limitations bars prior claims by relators. Relator Boise made his first Provigil claims in his first amended

complaint, which was filed on January 14, 2010.[10] However, relators' second amended complaint, filed February 28, 2014, was the first pleading filed after the Doe action was dismissed. In order to apply the statute of limitations, I must determine whether any Provigil claims in the first amended complaint would have survived the first-to-file bar while Doe was pending.

The FCA's first-to-file rule provides that: "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). "[T]he phrase 'related action based on the facts underlying the pending action,' clearly bars claims arising from events that are already the subject of existing suits." U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 232 (3d Cir. 1998). As long as "a later allegation states all the essential facts of a previously-filed claim, the two are related and section 3730(b)(5) bars the later claim, even if that claim incorporates somewhat different details." LaCorte, 149 F.3d at 232-33. Thus, the first-to-file bar applies when an earlier complaint "subsumes all the material elements" of a later claim or where a later claim "merely echo[e]s . . . [the] broader allegation" of the earlier complaint. Id. at 238, 236.

"The first-to-file bar is designed to be quickly and easily determinable, simply requiring a side-by-side comparison of the complaints." In re Natural Gas Royalties Qui Tam Litig. (CO2 Appeals), 566 F.3d 956, 964 (10th Cir. 2009). In LaCorte, the Court of Appeals applied § 3730(b)(5) by conducting a claim-by-claim analysis of the original and later-filed complaints and determining whether each discrete claim was barred. 149 F.3d at 235-36.

In its initial briefs supporting its motion to dismiss and in responses to notices of

---

[10] Relators Augustine and Dufour did not join this case until the second amended complaint was filed.

13

supplemental authority on this pending motion, Cephalon argues that the first amended complaint's Provigil allegations contain the same material elements as Doe's Provigil allegations. See Dkt. No. 78-1 at ECF p. 11. Cephalon argues that both the first amended complaint and the Doe complaint allege the same scheme to market Provigil for a number of off-label indications. Relators argue that there are several distinctions between the second amended complaint and the Doe complaint but they have not identified differences in the material elements alleged between the first amended complaint and Doe.[11] Examining the two complaints side-by-side, the first amended complaint and the Doe complaint plead the same "material elements."

As no Provigil claims from the first amended complaint can survive the first-to-file bar, the second amended complaint is the operative complaint for measuring the applicable six-year statute of limitations on all of relators' Provigil claims. Thus, all Provigil claims prior to February 28, 2008 — six years before the second amended complaint was filed — must be dismissed with prejudice.

---

[11] One difference that relators argue exists between the second amended complaint and the Doe complaint is paralleled in the first amended complaint. Both complaints allege that Cephalon engaged in a promotion scheme to market Provigil off-label for chronic fatigue, fatigue associated with depression, fatigue associated with multiple sclerosis and attention deficit hyperactivity disorder in children. Dkt. No. 14-1 at ¶ 41; Dkt. No. 80 at ¶ 63. The first amended complaint also lists "fatigue associated with schizophrenia" as an off-label use; Doe describes this as "fatigue or drowsiness resulting from other medications[,] including anti-psychotics." Dkt. No. 14-1 at ¶ 41; Dkt. No. 80 at ¶ 63. Compared with Doe, the Boise first amended complaint simply provides a more specific description of one of five conditions for which Cephalon allegedly marketed Provigil off-label. In light of the substantial similarities in the alleged Provigil marketing schemes, this single difference in specificity about one alleged off-label use is insufficient for the first amended complaint's Provigil claims to survive the first-to-file bar. See U.S. ex rel. Wilson v. Bristol-Myers Squibb, Inc., 750 F.3d 111, 119 (1st Cir. 2014) (finding the complaints in two FCA cases to contain the same material elements when both alleged "the same off-label promotion mechanisms or channels," even though the cases alleged off-label uses for different diseases and symptoms).

## III.     Conclusion

For the reasons stated above, I will deny Cephalon's motion to the extent that it seeks reconsideration of my July 30, 2015 order denying its motion to dismiss and will grant its motion to the extent that it seeks partial judgment on the pleadings. I will dismiss with prejudice relators' Provigil claims to the extent that they arose prior to February 28, 2008.

An appropriate Order follows.